## Samuel A. Shurtleff *versus* Calvin Willard.

On a sale of partnership goods by a partner to his copartner, a delivery of the property is necessary to the validity of the sale; but such delivery consists rather in the surrender of the possession and control of the goods, than in the actual tradition of them, by the seller to the purchaser.

On a sale of goods a delivery of a part for the whole, applies to all the goods embraced by the contract of sale, although they happen to be scattered in different and distant places.

The registration of a mortgage of personal property is, by *St.* 1832, *c.* 157, a substitute for a delivery of possession; and the continuance of the mortgagor's possession after the mortgage has become absolute, is not *per se* fraud, but at most is only evidence of fraud.

So of the use which the mortgagor shall have made of the property.

If the mortgagor of goods remains in possession of them, but the mortgage is duly recorded, so as to give the mortgagee a valid title, and the mortgagee assigns the mortgage, a creditor of the mortgagor cannot object that there was no delivery of the goods as between the mortgagee and his assignee ; and the assignee, without such a delivery, may maintain an action of trespass against an officer who attaches the goods at the suit of such a creditor.

If a portion of the goods embraced in a mortgage be of so transitory and perishable a nature that they cannot be the subject of a mortgage, this circumstance will not vitiate the mortgage in respect to the residue.

An objection to the competency of a witness should be made before he is examined in chief; but if it be not known until after such examination, it may be made in any stage of the trial, when discovered.

Trespass *de bonis asportatis.* The defendant, who was a sheriff, justified on the ground that the goods were rightfully taken on execution as the property of Noah Worcester. Trial before *Wilde* J.

The plaintiff claimed the property as assignee of a mortgage made by Worcester to Timothy H. Carter, dated February 5th, and recorded February 6th, 1834, pursuant to *St.* 1832, *c.* 157, and transferred by Carter to the plaintiff by an assignment dated March 16th, and recorded April 9th, 1834. The mortgage was made as collateral security for a note from Worcester to Carter, payable on the 1st of April, 1834.

The plaintiff produced a note, which he contended, and which Worcester (who was a witness on the part of the defendant) testified, was the note secured by the mortgage.

The defendant, upon the opening of his case, contended that it was necessary to the validity of a mortgage of person-

al property, duly recorded under the statute, but which had become absolute, that possession of the property should be taken and held by the mortgagee or his representative. But the judge ruled that such possession was not necessary ; that the neglect to take possession was only *evidence*, on which the jury were to judge whether the mortgage was or was not *bonâ fide*, valid and subsisting.

After the plaintiff had closed his case, the defendant called Worcester, to prove that the chattels mortgaged were once partnership property of a firm consisting of Horatio Carter, Worcester and Oscar C. B. Carter, and continued so at the time when the mortgage was made ; and also to prove that the mortgage to Carter was fraudulent as against the creditors of Worcester, even if the chattels were the sole property of Worcester. The defendant examined Worcester on these points and closed his case.

The plaintiff then called T. H. Carter, the mortgagee, to counteract the testimony of Worcester. The defendant objected that Carter was incompetent to testify, on the ground of interest. The plaintiff then executed and delivered a release to Carter of a particular note therein described, as collateral security for which the note and mortgage given by Worcester were supposed to have been assigned to the plaintiff, but reserving the plaintiff's right to the property in controversy. He produced at the same time a general assignment made by T. H. Carter for the benefit of his creditors ; and Carter executed a release to his assignees, of any surplus that might be coming to him by the result of this action. To the sufficiency of these releases the defendant made no objection.

On his cross-examination, Carter expressed some doubts whether the note secured by the mortgage was left with the plaintiff to secure the note mentioned in the plaintiff's release to the witness. The defendant thereupon again objected to the competency of the witness, and the plaintiff then executed and delivered another release. The defendant's counsel examined this release, and no objection was made to its sufficiency or operation ; and the examination of the witness was continued, no question being saved as to his admissibility. All this was on Friday. On Saturday the defendant proposed to give

evidence of confessions or declarations of the plaintiff, tha the suit was prosecuted for the benefit of T. H. Carter. It was objected by the plaintiff, that the defendant had closed his case, and in this stage of the cause ought not to go into such evi dence; but the defendant urged that the object was to impeach T. H. Carter, and the judge admitted it. It came from O. C B. Carter and Worcester. The plaintiff thereupon, on the same day, recalled T. H. Carter, and examined him directly, to know if he had any interest, and he denied that he had any The defendant made no objection to his being so examined, and cross-examined him; and he was dismissed from the stand. On Monday the plaintiff called the same witness to tes- tify as to what he owed the plaintiff and what amount of secu- rity the plaintiff had in his hands. The defendant then object- ed for the first time, that the witness was incompetent by reason of the plaintiff's admissions concerning his interest. But the judge admitted him, and he testified solely in respect to the amount which he owed the plaintiff and the security which the plaintiff held.

It appeared that most of the property in controversy had once belonged to the firm composed of H. Carter, Worcester and O. C. B. Carter. It was contended by the plaintiff, and evidence was offered by him to show, that on April 1st, 1833, that firm was dissolved by the consent of all the partners; that it was then agreed, in good faith, by all the partners, that Worcester and O. C. B. Carter should each receive a certain amount of monthly wages for the time they had been in the firm, in lieu and in full of their earnings and shares of the part- nership effects, and that H. Carter should have the partnership property and pay the debts.

It was proved, that under the agreement at the dissolution, a part of the partnership property was, by order of H. Carter, de- livered over to the firm of Carter, Andrews & Co., of which firm H. Carter was a member, to be by them applied to the payment of the debts of the firm dissolved as above mentioned. The part so delivered was livery stable stock, a part of the property distinct from the rest, and not here in controversy. The residue of the partnership property, consisting of the part here in controversy, was left in Worcester's possession, and

so remained to the time of the execution of the mortgage. The plaintiff offered in evidence a bill of sale, of April 21st, 1833, from H. Carter to T. H. Carter, and a bill of sale, of April 1st, 1833, from T. H. Carter to Worcester, and a note of that date from Worcester to T. H. Carter. The last mentioned bill of sale and note were executed in October 1833, and dated back ; and at the time of their execution Worcester was in the sole possession of the property described in this bill of sale.

The defendant contended that a delivery to H. Carter was necessary, to pass the partnership property ; and the judge so ruled. But he instructed the jury that a delivery of part for all was sufficient ; that they were to consider whether the delivery of part of the partnership property to Carter, Andrews & Co. was not a delivery of part for all ; that to make it such, no formal words were necessary, it was enough if the jury believed, on the evidence, that the delivery of part was intended as a delivery of the whole and to complete the contract, and as evincing that nothing more was to be done, to precede the closing of the transaction.

The defendant requested the judge to charge, that a delivery to T. H. Carter and also to Worcester, was necessary to be shown. But the jury were instructed, that if they found the sale from the firm to H. Carter was valid, the sale from him to T. H. Carter would be good as between the parties, and as to strangers, without delivery.

It was argued by the defendant, that Worcester's testimony proved that the mortgage was given with a view to prevent the property from being taken for debts of Carter, Andrews & Co., on whose notes Worcester was liable as indorser ; that at the time of the execution of the mortgage, T. H. Carter agreed that Worcester should remain in possession of the mortgaged property, and should sell, exchange, trade upon and otherwise use it. Worcester paid over to T. H. Carter a sum of money ; he also sold five cows, one yoke of oxen, and a wagon, the proceeds of which he applied to his own use, and he used up, in his farming, the hay, oats, manure, and some other articles, mentioned in the mortgage.

The plaintiff contended, upon the testimony of T. H. Car-

18

ter, that the agreement was, that Worcester should retain the possession, and should sell and exchange the property so far as the prudent administration of the property should render it necessary, but that whenever he sold, he was to pay over the proceeds to Carter or substitute equivalent security.

The judge instructed the jury, that the retaining possession of the mortgaged property by the mortgagor by agreement with the mortgagee, and the uses of the property which he continued to have by agreement with the mortgagee, were evidence of fraud; and if the jury believed, on all the evidence to that point, that the mortgage was made to cover property for the sake of defrauding creditors, it was void. The judge also charged, that if this fraudulent intent were *part* of the intent, a part of the purpose being to secure an honest debt to T. H. Carter, still the mortgage would be void; but that if the real and *sole* intent of the act was to prefer and secure a debt to Carter, then the mortgage was not fraudulent and void in law.

It was objected by the defendant, that there was not evidence that the mortgage was assigned and actually delivered to the plaintiff until after the 1st of April, 1834. The judge said that the plaintiff might be a *bonâ fide* holder for a valuable consideration, notwithstanding he was not proved to have taken the assignment until after that day.

It was in evidence, that the note of Worcester had been passed to the plaintiff as collateral security, though not actually indorsed, before the execution of the mortgage, and T. H. Carter testified that when he so passed the note, he told the plaintiff that he expected a mortgage from Worcester to secure it and he would transfer the mortgage to the plaintiff as soon as he should receive it.

The judge also ruled, that a formal delivery of the property to the assignee of the mortgage, was not necessary to enable him to maintain this action.

There was no evidence that the plaintiff had knowledge of any agreement between T. H. Carter and Worcester, concerning the possession of the property.

The judge instructed the jury, that if the plaintiff took the note and mortgage, believing he had security enough without

them, merely to accommodate Carter, and not as security, he would have no higher or other title than Carter ; but that if he took them, though merely as security, without notice, he would be a *bonâ fide* holder for a valuable consideration.

The jury returned a verdict for the plaintiff ; and in answer to questions put to them by the judge, they replied that they found the mortgage and the assignment both to be valid.

*Fletcher* and *C. Sumner*, for the defendant. The objection to the competency of T. H. Carter as a witness was not made too late, his interest not having been discovered until after he had been in part examined. *Turner* v. *Pearte*, 1 T. R. 719 ; 1 Phil. Ev. (6th ed.) 254 ; 1 Stark. Ev. (4th Amer. ed.) 121 ; *Evans* v. *Eaton*, 1 Peters's Circ. C. R. 338. His interest, being proved by evidence *aliunde*, could not be disproved by his own testimony. *Peirce* v. *Chase*, 8 Mass. R. 488 ; Roscoe on Ev. (1st Amer. ed.) 80 ; *Vincent* v. *Huff*, 4 Serg. & Rawle, 298.

On the dissolution of the firm consisting of H. Carter, Worcester and O. C. B. Carter, and the agreement to transfer the partnership property to H. Carter, a delivery was necessary to secure the property against creditors of the sellers ; and a delivery of a part in one place will not pass a title to another part in a distant place. *Ex parte Harris*, 1 Madd. R. 589 ; Gow on Partn. 297, 314, 334 ; 4 Law Magazine, (London,) 363 ; *Chaplin* v. *Rogers*, 1 East, 194 ; *Elmore* v. *Stone*, 1 Taunt. 460 ; 1 Campb. 235, note ; *Stoveld* v. *Hughes*, 14 East, 308 ; *Holderness* v. *Shackels*, 8 Barn. & Cressw. 618 ; *Hanson* v. *Mayer*, 6 East, 626 ; *Slubey* v. *Heyward*, 2 H. Bl. 509 ; *Hammond* v. *Anderson*, 4 Bos. & Pul. 69 ; *Payne* v. *Shadbolt*, 1 Campb. 427 ; *Simmons* v. *Swift*, 5 Barn. & Cressw. 864.

Supposing a sufficient delivery of the whole to H. Carter, the plaintiff's title is defective for want of a delivery from H. Carter to T. H. Carter. *Stoveld* v. *Hughes*, 14 East, 308 ; *Whitehouse* v. *Frost*, 12 East, 614.

Worcester, after making the mortgage to T. H. Carter, was permitted to trade upon and use up the property mortgaged, and did in fact trade upon it and use up a large portion of it This was *per se* a constructive fraud ; it was a secret trust ;

Shurtleff
*v.*
Willard.

*March* 11th.

which, on principle and authority, rendered the conveyance void. 1 Story on Eq. 261 ; *St.* 13 *Eliz. c.* 5 ; *Cadogan* v. *Kennett,* Cowp. 434 ; *Hamilton* v. *Russell,* 1 Cranch, 309 ; *Twyne's case,* 3 Coke, 80 ; *Coburn* v. *Pickering,* 3 N. Hamp. R. 424 ; *Divver* v. *M'Laughlin,* 2 Wendell, 600. In Massachusetts, no case has gone so far as to determine that the possession of the vendor under a secret trust, does not render the sale fraudulent and void.

The plaintiff's title is not better than that of his assignor. Having taken the assignment to secure an old debt, and without any new consideration, he is not a *bonâ fide* purchaser for a valuable consideration ; *Hardingham* v. *Nicholls,* 3 Atk. 304 ; 2 Story on Eq. 716 ; *Wood* v. *Mann,* 1 Sumner, 506 ; [*Clark* v. *Flint,* 22 Pick. 243 ;] and the mortgage having become absolute before the assignment, he is not to be regarded as a purchaser without notice. Bayley on Bills, (Phil. and Sewall's 2d ed.) 133, note 69.

The mortgage is void under the statute of Elizabeth, because some of the articles were of a perishable nature, the use of which was in the consumption ; and this circumstance makes it void as to all the articles. *Sommerville* v. *Horton,* 4 Yerger, 541.

The mortgage having become absolute and the mortgagee having taking no possession, and no delivery having been made at the time when it became absolute, it ceased to be operative as against creditors of the mortgagor, either as a continuing mortgage, (for they would have a right to infer that the condition had been performed ;) *St.* 1832, *c.* 157 ; 1 Powell on Mortg. (6th ed.) 38, Coventry's note ; *Dougherty* v. *Kercheval,* 1 Marshall, (Ken.) 52 ; *Clayborn* v. *Hill,* 1 Wash. 177 ; or as a sale. *Langdon* v. *Buel,* 9 Wendell, 80 ; *Ferguson* v. *Lee,* Ibid. 258 ; *Johnson* v. *Vernon,* 1 Bailey, 527.

The assignment by the mortgagee to the plaintiff being made after the mortgage had become absolute, a delivery was necessary in order to pass the property to the assignee and complete his title as against creditors of the mortgagor.

*Choate* and *Atwood,* for the plaintiff.

MORTON J. delivered the opinion of the Court. Several questions of law arise upon this report. But the labor of un-

derstanding the complicated statement of the case, rendered unusually obscure by the irregularity of the proceedings on the trial, and of ascertaining what legal questions are presented in it, has been greater than that of the decision of the questions themselves.  It may throw some light upon the subject and make our judgment and reasoning more intelligible, to trace the history of the property in controversy, through its various mutations, from an undoubted source.

The goods were once, indisputably, the property of the firm composed of Noah Worcester, Horatio Carter and Oscar C. B. Carter.  On the 1st of April, 1833, they dissolved the partnership, and Worcester and O. C. B. Carter assigned, by parol, on the terms agreed on, their interest in the concern, and their part of the property, to H. Carter.  On the 21st of April, 1833, H. Carter conveyed, by bill of sale, the same goods to Timothy H. Carter.  In October 1833, T. H. Carter conveyed the goods to Worcester, by a bill of sale, which was antedated to the 1st of April ; and Worcester's note for the consideration was also made to bear the same date.  On the 5th of February, 1834, Worcester mortgaged the goods to T. H. Carter ; and on the 16th of March following the latter assigned the mortgage to the plaintiff.  Under this mortgage the plaintiff now claims.  The defendant justifies the seizure of the goods as the property of Worcester, by virtue of an execution against him.

The jury have satisfactorily decided all the questions of fact, and have negatived all actual or intentional fraud ; and we have only to deal with the matters of law which arose upon the trial and have been reserved.

The delivery to Carter, Andrews & Co. was a sufficient delivery to H. Carter, to vest the whole property in him.  He being a member of the firm and having directed the delivery to be made to them and requested them to receive it, duly authorized them to act for him.  And the delivery to an agent is in law a delivery to the principal.  But a part only was delivered.  This the jury have found was delivered for the whole. Was this, under the circumstances of the case, sufficient to perfect the sale and vest the property in the purchaser ?  If, at the time of the sale, the purchaser has possession of the

articles bought, no actaul delivery is necessary or can be made. And so idle a ceremony as a formal or symbolical delivery the law does not require. *Chapman* v. *Searle*, 3 Pick. 45 ; *Macomber* v. *Parker*, 13 Pick. 183. Chattels holden by copartners or tenants in common, are in the possession of each as well as all. And either has the power to sell and deliver possession of the whole. But when one sells to another, the delivery does not so much consist in the actual tradition of the chattels from the one to the other, as in the surrender and relinquishment of the possession by the seller to the purchaser, thereby giving him the absolute and exclusive occupation and control of what before he held in common for himself and others. A delivery, therefore, between partners and tenants in common is rather a matter of form required to perfect the sale and complete the transfer, than any substantial part of the conveyance. But nevertheless it is deemed to be an indispensable requisite in the transfer of personal property. Gow on Partn. 296, 314, 335 ; Collyer on Partn. 130 ; 1 Montagu on Partn. 101, and cases collected in note ; *Ex parte Peake*, 1 Madd. 346 ; *Ex parte Harris*, 1 Madd. 583 ; *Ex parte Titner*, 1 Atk. 136 ; *Ex parte Ruffin*, 6 Ves. 119 ; *Ex parte Fell*, 10 Ves. 347 ; *Ex parte Williams*, 11 Ves. 3 ; *Ex parte Rowlandson*, 2 Ves. & Bea. 172.

The company having been dissolved by mutual consent, and two of the partners having agreed to sell their portions of the goods to the third, the property vested in him, provided the sale was perfected by a legal delivery. A part only was delivered ; but this part, as the jury have found, was delivered for the whole. That a contract of sale of numerous and various chattels may be executed without an actual transmission of the whole into the occupation of the purchaser, is familiar and unquestioned law. This may be done by a mere symbolical delivery, or by a delivery of a part for the whole. Long on Sales, (1st Amer. ed.) 148, 153 ; *Slubey* v. *Heyward*, 2 H. Bl. 504 ; *Hammond* v. *Anderson*, 4 Bos. & Pul. 69 ; *Parks* v. *Hall*, 2 Pick. 206. But the defendant's counsel, while they admit the rule, deny its application to chattels scattered, as these were, in different and distant places. They contend that it is limited to the same parcel or mass of goods,

as the cargo of a vessel or the stock of goods in a particular store or place. But we know of no such limitation. It would nearly destroy the utility of the rule and essentially embarrass and obstruct constructive deliveries. It would materially interfere with general assignments and extensive transfers of property. And in cases where the property was extensive and various it would be difficult, if not impracticable, to give effect to the conveyance by a proper delivery. The limitation which we find recognized, is to the contract of sale ; and the principle is, that a constructive delivery operates upon all the property contained in the agreement of the parties, and intended by them to be transferred.

Neither the conveyance of H. Carter to T. H. Carter, nor of the latter to Worcester, can be questioned in this action. These bills of sale are undoubtedly valid as to the parties and strangers. Purchasers and creditors only could be allowed to controvert them. But the defendant's counsel contend that the continuance of the possession of the mortgagor after the mortgage became absolute, with the use which he made of the property, was *per se* fraud or conclusive evidence of fraud. Whatever the rule of law upon this point may be in England or elsewhere, it is perfectly well settled in this State, in a series of cases which have been cited, that the possession of the vendor, whether the sale be absolute or conditional, is only evidence of fraud ; which, with the manner of the occupation, the conduct of the parties, and all other evidence bearing upon the question of fraud, is for the consideration of the jury.

By the *St.* 1832, *c.* 157, the registration of a mortgage of personal property is substituted for delivery of possession. And a mortgage duly executed and recorded, is effectual to pass the property described in it, without any other act or ceremony. *Bullock* v. *Williams*, 16 Pick. 33. And whether the mortgaged goods continue to be holden under the mortgage or become absolutely the property of the mortgagee, the possession of the mortgagor can at most be but evidence of fraud.

It is further contended, that this mortgage is invalid, because the property described is, from its transitory and perishable nature, incapable of being holden in mortgage. There may be chattels so transient in their existence or of such a na-

ture, their only use consisting in their consumption, that they cannot be mortgaged. *Sommerville* v. *Horton*, 4 Yerger, 543. But the property in question, being stock, farming tools, produce, &c. clearly is not of this description. But even if it were, the mortgage would not be invalid as to the residue.

The competency of T. H. Carter is objected to by the defendant's counsel. But the plaintiff's counsel not only deny his incompetency, but contend that the objections came too late and cannot now be insisted upon. There certainly was a good deal of irregularity in the management of the trial and the introduction of the evidence. But a less rigid adherence to matters of form is now observed than formerly, and a more liberal practice, which looks to the merits and justice of the case, rather than to technical rules and the order of proceeding, now prevails.

Formerly objections to the competency of witnesses were allowed only upon the *voir dire ;* and after the witness was sworn in chief, it was too late to allege his incompetency. It is now manifestly more proper to make the objection, before the examination in chief has shown whether the adverse party may wish to use or get rid of the testimony. But it nevertheless may be taken in any stage of the trial when discovered. 1 Stark. Ev. 121, 122, and cases cited. This is undoubtedly the rule when the disqualification is to be shown by the witness himself. It would, however, seem to be unreasonable, for a party possessing evidence of the incompetence of a witness, to withhold it till he had learned whether his testimony would be beneficial or injurious to him. And it may well be doubted whether, under such circumstances, it should be received. But there can be no doubt that when the evidence of the disqualification is unknown to the party at the time of the examination in chief, he may introduce it in any stage of the trial when he discovers it. Indeed if the existence of it did not come to the knowledge of the party till after the trial, it would, if of sufficient importance, be a good ground for granting a new trial.

It is very obvious that a party objecting to the competency of a witness, after his examination, cannot have the full benefit of the exclusion of his testimony. It has been given to the jury and cannot be obliterated from their memories. It may

Shurtleff
v.
Willard.

have made an impression of which they are unconscious, and which they may not be able to eradicate. All which the court can do to restore the party to his legal rights, is to instruct the jury to disregard the incompetent evidence and to decide the case, as if it had not been given.

We will not stop to inquire whether the relation of the witness to the plaintiff and to the transaction, rendered him incompetent or not. The testimony of Worcester and O. C. B. Carter clearly shows, that by the admissions of the plaintiff he was not only interested in the event of the suit but in fact the real party in it. Now it is not our province to inquire into the correctness of this testimony, but, in the decision of the question before us, we must regard it as true. If the question of interest had rested solely upon this evidence, it should have been submitted to the jury and they should have been instructed to disregard the evidence of T. H. Carter, if they believed those witnesses. There can be no doubt that the confession of the party is the proper proof of the interest of the witness. The declarations of witnesses would be hearsay, and witnesses cannot disqualify themselves by admissions of their incompetency made *in pais*. Nor upon a question of his admissibility, can a witness be permitted to testify as to his own competency. If proved to be interested, he cannot be sworn at all.

We have examined the several releases and discharges executed by the plaintiff and by the witness, and we are of opinion they entirely purge the witness of his interest. If he was interested in favor of the plaintiff, his releases entirely discharge him. If he was the real party in interest, his own release to his assignees would effectually transfer all his interest in the suit and forever estop him from claiming any of the fruits of the judgment. So that on the whole, we are satisfied with the admission of the testimony.

*Judgment on the verdict.*